UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BARSTOW, et al.,<br><br>    Defendants. | Case No. 5:21-cv-2032-MCS-KES<br><br>REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This Report and Recommendation ("R&R") is submitted to the Honorable Mark C. Scarsi, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

Stewart Manago ("Plaintiff"), an inmate in state custody after being convicted of a crime unrelated to this action[1], has filed a pro se civil rights

---

[1] The Court takes judicial notice of the records in two of Plaintiff' recent state prosecutions: San Bernardino County Superior Court ("SBCSC") Case Nos.


complaint under 42 U.S.C. § 1983 against the City of Barstow, members of the Barstow Police Department and the San Bernardino Sherriff's Department, and San Bernardino County judges, district attorneys, and court-appointed defense attorneys ("panel attorneys"), alleging they conspired to violate Plaintiff's constitutional rights. (Dkt. 1.)

For the reasons that follow, the Complaint should be dismissed in its entirety, most claims with prejudice and without leave to amend, but one claim (excessive force) with leave to amend.

## II.

## LEGAL STANDARD

The Court must screen any complaint in a civil action in which a prisoner seeks (1) a filing fee waiver (28 U.S.C. § 1915(e)(2)); or (2) "redress from a governmental entity, or from an officer or employee of a governmental entity" (28 U.S.C. § 1915A). Plaintiff does not seek to waive the filing fee, so the Court will screen the Complaint's substance.[2]

---

FVI17003315 (filed Dec. 4, 2017) and FVI17003316 (filed Dec. 4, 2017). See Fed. R. Evid. 201(b)(2); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

On December 4, 2017, Plaintiff was arrested and charged with violating California Vehicle Code § 2800 (evading an officer against traffic), of which he was ultimately convicted and sentenced to an indeterminate term of 25 years to life in state prison. See SBCSC Case No. FVI17003315. Plaintiff does not challenge the circumstances that led to this conviction.

Also on December 4, 2017, Plaintiff was charged with violating California Penal Code § 273.5(A) (domestic abuse), which was ultimately dismissed. See SBCSC Case No. FVI17003316. The allegations of the Complaint relate to this dismissed criminal case only.

[2] Plaintiff does not qualify for a fee waiver because he has three or more qualifying dismissals under the Prison Litigation Reform Act. See 28 U.S.C. § 1915(g).

The Court must dismiss the complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A complaint may fail to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). In determining whether a complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to plaintiff. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

## III.
## DISCUSSION

### A. Allegations in the Complaint.

The Complaint identifies twenty-three Defendants. Three Defendants are SBCSC judges: (1) Miriam I. Morton; (2) Bryan Stodghill; and (3) Michal Camber. Three Defendants are San Bernardino County district attorneys: (4) David J. Foy; (5) S. Monjazeb; and (6) J. Fimbres. Three Defendants are panel attorneys[3]: (7) P. Shah; (8) B. Wood; and (9) Stewart O'Melveny. Six Defendants are members of the Barstow Police Department ("BPD"): (10) Captain A. Espinoza; (11) Sergeant J. Gilmore; (12) Officer M. Helms; (13) Officer J. Zepeda; (14) Officer M. Allen; and (15) Investigator D. Schooler. Seven Defendants are members of the San Bernardino County Sherriff's Department (the Sherriff's Department"): (16) Sergeant J. Cahow; (17) Sergeant D. Lansdown; (18) Sergeant B. Taylor; (19) Deputy Z. Schirmbeck; (20) Deputy Jewsbury; (21) J. Ramirez; and

---

[3] California Penal Code § 987.2 authorizes a court to appoint, and pay from the general fund of the county, private attorneys to represent indigent criminal defendants if a public defender is unavailable. See also, People v. Hughes, 57 Cal. 2d 89, 98 (1961).

(22) Specialist L. Vanderkallen. The remaining Defendant is: (23) the City of Barstow. (Dkt. 1.)

The Complaint alleges that, in the late hours of August 29, 2017, Plaintiff's wife asked Plaintiff to come to a park in Barstow, California. (Id. at ¶ 1.) Plaintiff drove to the park as requested and, upon his arrival, Plaintiff's wife took his car keys and fled the park. (Id. at ¶¶ 1–2.) Plaintiff did not leave the park but stayed in his vehicle and charged his GPS ankle monitor. (Id. at ¶ 4.) While Plaintiff charged his ankle monitor, Plaintiff alleges that he witnessed a "light skinned black male" attack a woman named "Shawte" in the park, apparently killing her and taking her "lifeless body" away in a white van. (Id. at ¶¶ 5–6.) At the same time, an unknown "male and female" attacked Plaintiff and stabbed him in his "lower right side." (Id. at ¶¶ 7–8.) A bystander who witnessed these alleged events called 911, and BPD officers were dispatched to the scene. (Id. at ¶¶ 11–12.)

When the BPD officers arrived at the park, they "began a criminal investigation" that included "interviewing witnesses, reviewing video and audio recordings, as well as collecting bloody knives, [a] bloody jacket, and other physical evidence at the park scene." (Id. at ¶¶ 13–17.) At some point, Plaintiff's wife (who had apparently returned to the park) told BPD Defendant Helms that Plaintiff had earlier "hit her in the mouth one time, and she fell to the ground." (Id. at ¶ 19.) Defendant Helms subsequently applied for and obtained a warrant for Plaintiff's arrest, and Plaintiff was eventually arrested in December 2017 and "charged with domestic violence in violation of California Penal Code, 245 and 273.5." (Id. at ¶¶ 20, 22; see SBCSC Case No. FVI17003316.)

After Plaintiff's arrest, the trial court granted Plaintiff's request to represent himself and ordered the prosecution to disclose to Plaintiff any exculpatory or impeachment evidence. (Id. at ¶ 23.) The Complaint alleges that the prosecution was required to disclose, among other things, witness interviews regarding the alleged murder by the "light skinned black man," the video and audio recordings

that the BPD officers reviewed at the park, GPS data from Plaintiff's ankle monitor, Plaintiff's cell phone data, and the "bloody knives, bloody jacket, and other physical evidence" collected at the park.[4] (Id. at ¶ 39.) The Complaint alleges that the prosecution never turned over any of this evidence to Plaintiff. (Id., passim.)

On January 29, 2018, a preliminary hearing was held, at which Plaintiff's wife invoked her Fifth Amendment rights and refused to testify. (Id. at ¶ 37.) BPD Defendant Helms testified for the prosecution, and BPD Defendant Allen testified for Plaintiff. (See Minute Order regarding preliminary hearing in SBCSC Case No. FVI17003316 (dated January 29, 2018).) Photographs of Plaintiff's wife's injuries were also presented, as well as photographs of Plaintiff's vehicle. (Id.) At the close of the preliminary hearing, the court held Plaintiff to answer. (Id.; Dkt. 1 at ¶ 42.) The Complaint alleges that Plaintiff's wife recanted her accusations against Plaintiff on March 9, 2018, and that she signed a declaration to that effect on April 13, 2018. (Id. at ¶¶ 66–67).

At some point while Plaintiff was detained at High Desert Detention Center ("HDDC") awaiting trial, Defendants Cahow, Lansdown, and Schirmbeck (members of the Sherriff's Department) came to Plaintiff's cell and "seized much of Plaintiff's 'confidential work product'" regarding his defense, telling him that the amount of paperwork violated HDDC policy. (Id. at ¶¶ 77–78, 81.) The Sherriff's Department officers subsequently lost Plaintiff's "work product." (Id. at ¶ 85.) Upset that his "work product" had been lost, Plaintiff "barricaded his cell with a mattress and blocked the windows with newspaper so deputies could no longer see inside." (Id. at ¶ 80.) Defendant Cahow then "formed an extraction team of several deputies," but Plaintiff does not allege what events transpired next.

---

[4] It is unclear how this evidence would have been material or exculpatory in Plaintiff's domestic violence prosecution. Plaintiff does not allege that other persons at the park injured his wife.

(See id. at ¶ 82.) The Complaint alleges that Plaintiff was subsequently charged with felony vandalism as a result of this incident.⁵ (Id. at ¶ 88.)

Plaintiff moved to dismiss the domestic violence charges against him based on the Sherriff's Department losing his "work product," but Defendant Camber found at a hearing on September 6, 2019, that the Sherriff's Department had not intentionally lost Plaintiff's "work product": "I'm not convinced that it was something you did. It seems that it was probably lost by the Sherriff in terms of the way you were moved around." (Id. at ¶ 106 [citing "Reporters Transcripts (R.T. 9-6-19 pg. 26 line 24"].)

A jury convicted Plaintiff of the evasion charges in SBCSC Case No. FVI13003315, and on February 19, 2021, Plaintiff was sentenced to 25 years to life in state prison. The same day that Plaintiff was sentenced, the prosecution moved to dismiss the domestic violence charges in SBCSC Case No. FVI17003316 and also moved to dismiss the vandalism charges in SBCSC Case No. FVI19000666, which the court granted "over Plaintiff's objection." (Id. at ¶ 128).

Based on the allegations in the Complaint, Plaintiff alleges that Defendants conspired to violate his constitutional rights by: (1) failing to turn over exculpatory or impeachment evidence in the domestic violence case; (2) falsely arresting Plaintiff for domestic violence; (3) maliciously prosecuting Plaintiff for domestic violence; (4) using excessive force against Plaintiff; and (5) failing to protect Plaintiff. The Complaint also alleges: (6) supervisory liability; (7) municipal liability; and (8) a claim under California's Whistleblower Protection Act (Cal. Gov. Code § 8547 et seq.).

---

⁵ The Court also takes judicial notice of the records in Plaintiff's felony vandalism case, SBCSC Case No. FVI19000666 (filed March 9, 2019). See Fed. R. Evid. 201(b)(2); Harris, 682 F.3d at 1132.

**B.     Incurable Pleading Deficiencies.**

    **1.     Claims Against State Court Judges, District Attorneys, and Panel Attorneys.**

The Complaint alleges that state court judges (Defendants Morton, Stodghill, and Camber), district attorneys (Foy, Monjazeb, and Fimbres), and panel attorneys (Shah, Wood, and O'Melveny) conspired to violate Plaintiff's constitutional rights. For the reasons that follow, the claims against these particular defendants are barred by doctrines of immunity and should be dismissed with prejudice.

        a.     State Court Judges.

The claims against Defendants Morton, Stodghill, and Camber (state court judges) are barred by judicial immunity. Judicial officers are absolutely immune from civil suits arising out of the exercise of their judicial functions. Mireles v. Waco, 502 U.S. 9, 11 (1991). The rationale behind this long-established doctrine is that the "proper administration of justice" requires "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1872). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1973). A judge can act erroneously or even maliciously or corruptly without exposure to personal liability so long as the judge's acts are "judicial." Pierson v. Ray, 386 U.S. 547, 554 (1967).

The Complaint does not allege that any of the actions by Defendants Morton, Stodghill, or Camber were taken in the complete absence of their jurisdiction. Indeed, each of the alleged wrongful acts by Defendants Morton, Stodghill, or Camber was taken during the various stages of Plaintiff's domestic violence case. The Complaint alleges that Defendant Morton conspired to conceal exculpatory

evidence at the preliminary hearing (Dkt. 1 at ¶ 39), that Defendant Stodghill conspired to conceal the fact that Plaintiff's wife filed a false police report to BPD Defendant Helms (id. at ¶ 62), and that Defendant Camber conspired to conceal exculpatory evidence and to "cover up" the Sherriff's Department destroying Plaintiff's "work product" by finding that it had not been lost intentionally by the Sherriff's Department (id. at ¶ 99, 105-107). Each of these alleged acts were "judicial" in nature and, thus, cannot be the basis of § 1983 liability.

    b. District Attorneys.

  The claims against Defendants Foy, Monjazeb, and Fimbres (district attorneys who appeared in the domestic violence case) are barred by prosecutorial immunity. State prosecutors are entitled to absolute prosecutorial immunity from liability under § 1983 when they are acting pursuant to their official role as advocates for the state performing functions "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Gobel v. Maricopa Cty., 867 F.2d 1201, 1203 (9th Cir. 1989); Lacey v. Maricopa County, 693 F.3d 896, 912 (9th Cir. 2012) ("Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts."). Moreover, the immunity extends to all "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Thus, absolute immunity applies to all conduct that is "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. Such conduct may even include "actions preliminary to the initiation of a prosecution and acts apart from the courtroom." Lacey v. Maricopa County, 693 F.3d 896, 912 (9th Cir. 2012) (citations omitted), superseded by statute on other grounds as stated in Bender v. Gila Cty. Sheriff's Office, 2013 U.S. Dist. LEXIS 121888 (D. Ariz. Aug. 27, 2013)). As such, Defendants Foy, Monjazeb, and Fimbres are entitled to complete immunity.

   c. Panel Attorneys.

  The claims against Defendants Shah, Wood, and O'Melveny (panel attorneys who represented either Plaintiff or Plaintiff's wife in the domestic violence case) are also barred. To state a claim under § 1983, a plaintiff must allege, among other things, that the conduct complained of was committed by a person acting under color of state law. Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998). Public defenders and court-appointed panel attorneys are not state actors under § 1983. See generally Polk County v. Dodson, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); Miranda v. Clark County, Nevada, 319 F.3d 465, 468 (9th Cir. 2003) (reasoning that, although a public defender was "paid by government funds and hired by a government agency . . . his function was to represent his client, not the interests of the state or county").

  The claims against Defendants Shah, Wood, and O'Melveny are therefore barred. These panel attorneys represented the interest of their respective clients, not the government, and the fact that they were paid from government funds (see Cal. Pen. Code § 987.7) does not make them state actors. Miranda, 319 F.3d at 468. Likewise, Plaintiff's conclusory allegations that the panel attorneys conspired with state officers to deprive him of his constitutional rights are insufficient to make them state actors. See Price v. Hawaii, 939 F.2d 702, 708 (9th Cir.1991) (requiring more than "conclusionary allegations" to consider a private party a state actor for the purposes of § 1983 (citation and internal quotation marks omitted)). The Complaint cannot, therefore, state a § 1983 claim against Defendants Shah, Wood, and O'Melveny.

### 2. "Brady" Claim.[6]

Plaintiff fails to state a Brady claim against any of the Defendants because his underlying domestic violence case did not go to trial. In a criminal case, the government is under an affirmative duty to disclose exculpatory evidence to the defense before trial. See U.S. v. Alderyce, 787 F.2d 1365, 1369 (9th Cir. 1986) ("The duty to disclose exculpatory evidence prior to or at trial exists even in the absence of a specific request for the evidence by defense counsel."). In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that a prosecutor's failure to timely turn over exculpatory evidence to a criminal defendant can violate that defendant's constitutional right to a fair trial. Id. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

The Ninth Circuit has not addressed in a published opinion the issue of whether a plaintiff can maintain a § 1983 claim for monetary damages based on alleged Brady violations where there is no underlying conviction. Nonetheless, several district courts within the Ninth Circuit have found that such a claim is not cognizable absent a criminal conviction. See, e.g., Deeter-Larsen v. Whatcom Humane Soc'y, No. 2:18-cv-00300-RAJ, 2019 WL 2524939, at *6 (W.D. Wash. June 19, 2019) ("[T]here were no convictions, and a Brady violation cannot occur where there is no conviction."); McLaine v. Clark Cty., Nevada, No. 2:14-cv-00288-JAD-GWF, 2017 WL 3974995, at *3 (D. Nev. Sept. 8, 2017) (acknowledging that the Ninth Circuit has not addressed the issue, and dismissing the plaintiff's § 1983 Brady claim because, in order to maintain such a claim, "there

---

[6] Because Defendants Morton, Stodghill, Camber, Foy, Monjazeb, Fimbres, Shah, Wood, and O'Melveny are immune from suit, the Court's analysis in the remainder of this R&R is limited to the remaining Defendants, i.e., the City of Barstow, the BPD Defendants, and the Sherriff's Department Defendants.

has to be a conviction"); Wagner v. Finneran, No. 5:07-cv-01557-AG-RNB, 2008 WL 2156723, at *4 (C.D. Cal. May 22, 2008) (recognizing that the Ninth Circuit has not addressed the issue but concluding that "[w]ith respect to § 1983 liability on the part of law enforcement officers for alleged Brady violations, it is well established that, in order to state a claim, a wrongful conviction must have followed the alleged Brady violation."). And in an unpublished decision, the Ninth Circuit held that a § 1983 Brady claim does not lie absent a criminal conviction. See Puccetti v. Spencer, 476 F. App'x 658 (9th Cir. 2011); but see Smith v. Almada, 640 F.3d 931, 946 and n.1 (9th Cir. 2011) (Nelson, J. dissenting) (noting the majority found it unnecessary to rule on the issue, leaving it unresolved in the Ninth Circuit).

    The Court accordingly finds that Plaintiff cannot state a § 1983 Brady claim based on Defendant's conduct in the domestic violence case because the charges were dismissed. That is, Plaintiff cannot show that any suppressed evidence could have produced a different result at trial because there was no trial. Puccetti, 476 F. App'x at 661; see Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir.1999) (adopting identical reasoning in denying civil Brady claims when the plaintiff was never convicted); Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir.1998) (same); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir.1988) (same).[7]

    For these reasons, Plaintiff's Brady claim should be dismissed with prejudice and without leave to amend.

---

[7] To the extent that Plaintiff alleges that, but for the suppression of Brady evidence, he would not have been held to answer the domestic violence charges and, thus, would not have been detained awaiting trial, the Court finds no plausible injury under such theory. That is, Plaintiff would have been in custody in any event because he was awaiting trial on the unrelated evasion charges in SBCSC Case No. FVI13003315.

### 3. False Arrest Claim.

While the Complaint does not specify the Defendants against whom Plaintiff's claim for false arrest on the domestic violence charges is brought, the Court finds that only the arresting officers, i.e., the BPD Defendants, could conceivably be liable. Nevertheless, Plaintiff's claim against the BPD Defendants fails.

To prevail on a § 1983 false arrest claim, the plaintiff must demonstrate that there was no probable cause for the arrest. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998). A plaintiff may not generally sue the police on a Fourth Amendment § 1983 claim for false arrest where a judge has found probable cause and validly issued an arrest warrant. There are two exceptions to this general rule, however.

First, if the arrest warrant is facially valid, the arresting officer may be liable if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 334–345 (1986); see Smith v. Almada, 640 F.3d 931, 937 (9th Cir. 2011); Forster v. Cnty. of Santa Barbara, 896 F.2d 1146, 1147–48 (9th Cir. 1990) (reasoning that a determination of whether an officer is liable for false arrest turns on "whether the warrant was valid" and "whether the police officer's reliance on the warrant was nonetheless objectively reasonable"). Alternatively, a plaintiff may challenge an arrest warrant based on "judicial deception" if the officer who applied for the arrest warrant "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." Smith, 640 F.3d at 937.

Based on the allegations of the Complaint, the Court construes Plaintiff's false arrest claim to be premised upon the latter exception. Plaintiff appears to contend that Defendant Helms misled the magistrate judge when applying for the warrant because he knew or should have known that Plaintiff's wife's accusations were false. (See Dkt. 1 at ¶¶ 62–63.) While the Complaint alleges that Plaintiff's

wife had a history of making false accusations against Plaintiff (see id. at ¶ 21), none of the facts alleged supports the conclusion that Defendant Helms knew or should have known that Plaintiff's wife was not being truthful when she made the report. Indeed, photographs of Plaintiff's wife's injuries were presented at Plaintiff's preliminary hearing, so there was some additional evidence of violence that supported the judge's finding of probable cause. Having no factual basis to claim judicial deception, Plaintiff's § 1983 false arrest claim should therefore be dismissed with prejudice and without leave to amend.

### 4. Malicious Prosecution Claim.

The Complaint does not specify against which of the Defendants Plaintiff's clam for malicious prosecution of the domestic violence charges is brought. Again, of the non-immune Defendants, only the BPD Defendants could conceivably be liable for this claim. However, Plaintiff's malicious prosecution claim fails against the BPD Defendants.

The Ninth Circuit has long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter [based on wrongful arrest] because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) ("Smiddy I"), overruled on other grounds by Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008). However, "[t]he presumption can be overcome . . . by evidence that the officers knowingly submitted false information or pressured the prosecutor to act contrary to her independent judgment." Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir. 1986), opinion modified on denial of rehg, 811 F.2d 504 (9th Cir. 1987) ("Smiddy II "); see also Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988) (evidence that police officers provided prosecutor with only a police report containing "striking omissions" indicated that the officers "procured the filing of the criminal complaint by making misrepresentations to the

prosecuting attorney" and was sufficient to overcome the presumption). In contrast, the Ninth Circuit has clarified that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir. 1994). When a plaintiff pleads no facts to rebut the presumption of prosecutorial independence, dismissal is appropriate. Smiddy II, 803 F.2d at 1471.

Plaintiff alleges that Defendant Helms' arrest warrant application was based on Plaintiff's wife's false accusations of domestic violence. (Dkt. 1 at ¶¶ 20–21.) The Complaint does not allege any fact, however, showing that Defendant Helms had cause to know such accusations were false. The Complaint thus falls short of alleging any facts that, if true, would rebut the Smiddy presumption of prosecutorial independence. Therefore, Plaintiff does not—and cannot—state a claim under § 1983 based on malicious prosecution of the domestic violence charges against any BPD Defendant. Plaintiff's malicious prosecution claim should be dismissed with prejudice and without leave to amend.

### 5. Failure to Protect Claim.

The Complaint does not allege which Defendants failed to protect Plaintiff, in violation of his constitutional rights. It appears that only the allegations regarding Plaintiff's detention at HDDC relate to this claim. Thus, the Sherriff's Department Defendants are the only Defendants who could conceivably be liable. This claim fails, however, for the reasons explained below.

"Inmates who sue prison officials for injuries suffered while in custody may do so . . . , if not yet convicted, under the Fourteenth Amendment's Due Process Clause." Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the

14

plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. Id. at 1071. No allegations in the Complaint even approximate a failure to protect plaintiff from a known physical harm.

Liberally construing the Complaint, Plaintiff appears to contend that the Sherriff's Department Defendants failed to protect not his person, but rather his "work product" regarding his defense to the domestic violence charges after it was seized by the Sherriff's Department. Such allegations are better construed as a First Amendment denial of access to courts claim. However, that claim would also fail. The Constitution guarantees prisoners meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977). Plaintiff cannot claim a constitutional violation for interference with his legal materials unless he can show actual injury caused by the interference. Lewis v. Casey, 518 U.S. 343, 351 (1996). An "actual injury" is " 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.' " Id. at 348. Here, Plaintiff cannot show an actual injury as a result of his lost "work product" because the domestic violence charges were ultimately dismissed.

Plaintiff's failure to protect/provide access to courts claim should, therefore, be dismissed without leave to amend.

### 6. Supervisory Liability Claim.

The Complaint does not specify which Defendants are alleged to be liable under a supervisory liability theory. The Court construes this claim to be against Defendant Espinoza, Captain of the BPD and the only non-immune Defendant in a supervisory role.

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.2011) (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)). As explained throughout this R&R, Plaintiff fails to state a constitutional claim against any BPD Defendant and, thus, Plaintiff cannot allege that Defendant Espinoza's supervisory actions caused a constitutional violation.

### 7. Municipal Liability Claim.

Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978); Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007). Instead, plaintiffs must establish that "the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [they] suffered.'" Whitaker, 486 F.3d at 581 (quoting Galen v. City of L.A., 477 F.3d 652, 667 (9th Cir. 2007)).

The only municipal Defendant is the City of Barstow. Plaintiff has not alleged the existence of any municipal policy that caused a constitutional violation. Indeed, Plaintiff has not alleged facts sufficient to show a constitutional violation by any BPD Defendant, let alone that they acted pursuant to a municipal policy. Thus, Plaintiff's municipal liability claim fails.

### 8. Whistleblower Protection Act Claim.

Plaintiff's state law claim under California's Whistle Blower Protection Act (California Government Code § 8547 et seq.) fails. "[T]he California Whistleblower Protection Act generally forb[ids] retaliation *against an employee of a state agency* . . . for disclosing information that may evidence improper government activity, if the purpose of the disclosure was to remedy the improper

situation." Fahlen v. Sutter Cent. Valley Hosps., 58 Cal.4th 655, 670 (2014) (citing Cal. Gov't Code §§ 8547.2(a), 8547.10(b), 8547.10(c)) (emphasis added). Plaintiff has not alleged that he was a government employee. The Court takes judicial notice of the records in Manago v. Williams, No. 2:07-cv-02290-TLN-KJN (E.D. Cal. filed October 26, 2007), which demonstrates that Plaintiff was previously convicted on felony burglary, robbery, rape, and assault charges. (See id., Dkt. 184-2.) Thus, it appears impossible that Plaintiff could plead that he was a government employee. Plaintiff's Whistleblower Protection Act claim, therefore, should be dismissed with prejudice and without leave to amend.

### 9. Amendment Would be Futile.

The Court is mindful that leave to amend should be liberally granted to pro se litigants. See Fed. R. Civ. P. 15(a); Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003). In this case, however, granting Plaintiff leave to amend the above claims would be futile. See In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013) (listing "futility of amendment" and "whether plaintiff has previously amended his complaint" as factors to be considered in granting or denying leave to amend), aff'd sub nom. Oneok, Inc. v. Learjet, Inc., 575 U.S. 373 (2015). Plaintiff cannot plead additional facts to overcome the immunity that judges, prosecutors, and public defenders have against Plaintiff's § 1983 claims. Nor can Plaintiff plead additional facts that would cure the other above-identified deficiencies. Plaintiff has pled in detail the alleged governmental wrongdoings (e.g., believing his wife's accusations, arresting him for domestic violence, not disclosing certain evidence of the murder he witnessed in the park, losing his "work product"); none of these acts constitute constitutional violations. Thus, the foregoing causes of actions should be dismissed with prejudice and without leave to amend.

## C. Curable Pleading Deficiencies.

### 1. Excessive Force Claim.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from excessive force that amounts to punishment. Kingsley v. Hendrickson, 576 U.S. 389, 397–398 (2015) (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). The elements of a Fourteenth Amendment claim for excessive force by a pre-trial detainee are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. Castro, 833 F.3d at 1071.

The Complaint, however, fails to allege any force, by any Defendant, was used against Plaintiff. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Each allegation must be simple, concise, and direct." Fed. R. Civ. Proc. 8(d)(1). Conclusory allegations are insufficient. See Iqbal, 556 U.S. at 678, 686. "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (citation omitted). A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, for what relief, and on what theory." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

The only plausible instance of force alleged in the Complaint is that, while detained at HDDC, Defendant Cahow of the San Bernardino County Sherriff's

Department "formed an extraction team." (Dkt. 1 at ¶¶ 80, 82). Some of the other Sherriff's Department Defendants may have had some role in the "extraction." Alleging an "extraction" alone, however, is insufficient to state a claim for excessive force.

Plaintiff's excessive force cause of action should, therefore, be dismissed. The Court should grant leave to amend this claim, but only as to those Sherriff's Department Defendants already named and only as to allegations that they used excessive force to conduct the "extraction," if Plaintiff contends that they did. Plaintiff's excessive force claim against the remaining Defendants should be dismissed with prejudice and without leave to amend.

## IV.
## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order:

(1) approving and accepting this Report and Recommendation;

(2) dismissing the Complaint in its entirety;

(3) dismissing with prejudice and without leave to amend all claims against Defendants Morton, Stodghill, Camber, Foy, Monjazeb, Fimbres, Shah, Wood, O'Melveny, Espinoza, Gilmore, Helms, Zepeda, Allen, Schooler, and the City of Barstow; and

(4) dismissing without prejudice and with leave to amend the excessive force claim against Defendants Cahow, Lansdown, Taylor, Schirmbeck, Jewsbury, Ramirez, and Vanderkallen.

(5) If Plaintiff chooses to file a First Amended Complaint, it should bear the docket number assigned to this case (5:21-cv-2032 MCS (KES)), be labeled "First Amended Complaint," and be complete in and of itself without reference to the original Complaint, or any other documents (except any relevant documents that are attached to the First Amended Complaint as exhibits). The First Amended

Complaint may not include new defendants, defendants that have been dismissed with prejudice, defendants not involved in the "extraction" allegations in the Complaint, or any claims unrelated to the § 1983 excessive-force allegations arising from the "extraction."

DATED: February 15, 2022

_____
KAREN E. SCOTT
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to timely file objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any objections will be reviewed by the District Judge whose initials appear in the case docket number.